**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SONYA FIELDS, individually and
as Guardian and Conservator for
MITCHEL AVERY FIELDS, an
incapacitated person,

                                                Case No. 2:10-cv-14406

        Plaintiff,                           Hon. Lawrence P. Zatkoff

v.

GERARDO FIERRO, *et al.*,

        Defendants.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on October 13, 2011.

PRESENT:  THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I.  INTRODUCTION**

This matter is before the Court on Plaintiff's Motion for Summary Judgment[1] [dkt 16].

The parties have fully briefed the motion.  The Court finds that the facts and legal arguments are

adequately presented in the parties' papers such that the decision process would not be

significantly aided by oral argument.  Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is

hereby ORDERED that the Motion be resolved on the briefs submitted, without oral argument.

For the following reasons, Plaintiff's Motion for Summary Judgment is GRANTED.

---

[1] Plaintiff's Motion seeks summary judgment regarding the specific issue of whether Plaintiff suffered a threshold injury pursuant to MICH. COMP. LAWS § 500.3135(7).  As such, the Court will treat the Motion as one for Partial Summary Judgment.

## II.  BACKGROUND

### A.  FACTUAL BACKGROUND

This case involves a motor vehicle accident ("Accident") that took place on April 10, 2010.   On that day, Plaintiff Mitchel Avery Fields, a working pharmacist, was driving southbound on Telegraph Road in Taylor, Michigan.  As Plaintiff was driving, a tractor-trailer driven by Defendant Gerardo Fierro ("Fierro") was stopped facing south in the center turn lane on Telegraph Road, near the intersection of Northline Road.  Fierro was delivering a shipment of chili peppers for his employer, Defendant Chicano's Express ("Chicano's").  The delivery was brokered by Mangat Group, Inc. (not a party to this action), which owned the tractor-trailer driven by Fierro.

Shortly after 5:00 p.m. that day, Plaintiff's car crashed into the right rear of the tractor-trailer while it was stopped in the center turn lane.  Fierro was seated in the driver's seat, and Ignacio Acedo (not a party to this action) was seated in the passenger seat.  As a result of the Accident, Plaintiff suffered serious injuries, including the eventual amputation of his left arm at the shoulder.  Plaintiff contends that his injuries were caused by Fierro's negligence, which purportedly extends liability to Chicano's based on the theory of *respondeat superior*. Plaintiff's wife, Sonya Fields, brought this action on his behalf, seeking economic and non-economic damages and attorney fees from Defendants for Plaintiff's injuries.

### B.  PROCEDURAL BACKGROUND

On October 25, 2010, Plaintiff filed his complaint in Wayne County Circuit Court.  On November 3, 2011, Defendants filed their Notice of Removal with this Court, on the basis of diversity jurisdiction.  On April 18, 2011, Plaintiff filed the instant Motion, seeking partial

2

summary judgment as to whether the injuries he sustained in the Accident rise to the level of a serious bodily impairment or permanent serious disfigurement pursuant to Michigan law.

### III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or;
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex*, 477 U.S. at 323.   The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

"[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

Michigan has partially abolished tort liability for non-economic damages arising out of an automobile accident. MICH. COMP. LAWS § 500.3135(1), (3)(b). A plaintiff injured in an automobile accident may file a tort claim for non-economic damages if the plaintiff suffers "death, *serious impairment of a body function* or *permanent serious disfigurement*." MICH. COMP. LAWS § 500.3135(1) (emphasis added). Plaintiff claims that the injuries he suffered in the accident with Defendants constitute a "serious impairment of body function" ("serious impairment") and a "permanent serious disfigurement" ("disfigurement"), allowing him to seek non-economic damages pursuant to MICH. COMP. LAWS § 500.3135(1). Defendants dispute that Plaintiff's injuries rise to the level of either serious impairment or disfigurement. Defendants further contend that there is no evidence to support Plaintiff's claim of serious impairment or disfigurement, and that Plaintiff's motion is premature because Defendants have not taken sufficient discovery, including deposing Plaintiff.

The Court notes at the outset that it is undisputed that Plaintiff suffered serious injuries in the Accident, including the eventual amputation of his left arm. Notwithstanding any additional injuries he may have suffered, the Court finds that the amputation of Plaintiff's arm is sufficient evidence for purposes of deciding this Motion, and thus the Court will not address the nature or extent of any other injuries claimed by Plaintiff. As such, the Court finds as a matter of law that

the amputation constitutes a serious impairment and disfigurement under MICH. COMP. LAWS §

500.3135.

### A. SERIOUS IMPAIRMENT OF BODILY FUNCTION

A "serious impairment of body function" is an objectively manifested impairment of an

important body function that affects the person's general ability to lead his or her normal life.

MICH. COMP. LAWS § 500.3135(7).   The Court determines, as a matter of law,  whether the

serious impairment threshold for recovery of non-economic damages has been met by using a

three-part analysis: (1) an "objectively manifested impairment" must be observable or

perceivable from actual symptoms or conditions; (2) an "important body function" is a body

function of value, significance, or consequence to the injured person; and (3) whether it "affects

the person's general ability to lead his or her normal life" entails analyzing the plaintiff's

capacity to live in his or her normal manner of living. *McCormick v. Carrier*, 795 N.W.2d 517,

523–24 (Mich. 2010).

First, the amputation is an objectively manifested impairment, since the absence of

Plaintiff's arm at the shoulder is unquestionably observable and perceivable.  Next, the loss of

Plaintiff's arm impairs countless bodily functions of value or consequence.  Most significant is

Plaintiff's inability to perform essentially *any* bodily function requiring use of both hands.  This

hinders his ability to perform even the simplest duties in his role as a pharmacist, such as

opening a bottle of medication or operating a computer.  Last, it is clear that the amputation

affects Plaintiff's general ability to lead a normal life, as again, any normal life function

involving the use of two hands would be significantly impaired, if not impossible.  Showering,

getting dressed, eating, and operating a vehicle are but a few examples of normal life functions

that would likely become challenging for an amputee.  In short, the Court is remiss to find an injury more devastating to one's ability to perform normal functions than is the loss of a limb. Accordingly, the Court finds that Plaintiff's loss of his left arm constitutes a serious impairment of bodily function.

### B.  PERMANENT SERIOUS DISFIGUREMENT

Because the Court finds that Plaintiff's injury constitutes a serious impairment, no further inquiry is necessary to grant Plaintiff's Motion.  Nevertheless, the Court finds that even if Plaintiff did not suffer a serious impairment, he has clearly suffered permanent disfigurement as a result of the Accident.

A "permanent serious disfigurement," is a long-lasting and significant change that mars or deforms the injured person's appearance.  *Fisher v. Blankenship*, 777 N.W.2d 469, 478 (Mich. Ct. App. 2009).  When determining whether an injury meets the disfigurement threshold for tort recovery, the focus must be on the outward appearance of the injury, without the use of devices designed to conceal the disfigurement. *See id.* at 478–79.

In *Fisher*, the court found that the loss of a plaintiff's top front teeth, which were removed to facilitate the use of dentures after he lost a single tooth in a collision, constituted a "permanent serious disfigurement" because the loss of teeth marred or deformed the plaintiff's overall appearance.  *Id.* at 479.  The *Fisher* court rejected the defendant's argument that the impairment was not visible when the plaintiff wore the dentures, holding that courts must consider the effect of the disfigurement on the injured person's appearance without the use of devices designed to conceal the disfigurement.  *Id*.

Here, it is beyond dispute that the loss of an arm would constitute a serious disfigurement, especially in light of the *Fisher* court's finding of disfigurement with respect to

the loss of teeth.  A missing arm is substantially more serious than missing teeth.  A person's

missing teeth are visible only when that person's mouth is open, whereas a person's missing arm

is always visible. Moreover, unlike missing teeth, which can, to a large extent, be replaced both

functionally and aesthetically with dentures, a missing arm is essentially irreplaceable in both

respects.  Although the parties' briefs did not raise the issue, the Court finds that even if Plaintiff

*could* minimize the appearance of the amputation through prosthesis, the need for the prosthesis

would itself be evidence of the severity of the disfigurement.  *See id*. at 480.  As such, the Court

finds that Plaintiff's amputated left arm mars or deforms his appearance to such an extent as to

constitute a permanent serious disfigurement.

## V. CONCLUSION

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED that Plaintiff's

Motion for Summary Judgment [dkt 16] is GRANTED.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
Date:  October 13, 2011                   HON. LAWRENCE P. ZATKOFF
                                          UNITED STATES DISTRICT JUDGE